1

2          **E-Filed 7/15/11**

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                      SAN JOSE DIVISION

11

12   J & J SPORTS PRODUCTIONS, INC.,          Case Number 5:10-cv-05098-JF/HRL

13                      Plaintiff,            ORDER[1] GRANTING IN PART
                                              MOTION FOR DEFAULT
14         v.                                 JUDGMENT

15   REYNALDO PIMENTAL, individually and doing
     business as Mariscos La Perla,
16
                        Defendant.
17

18

19         Plaintiff J & J Sports Productions, Inc. ("Plaintiff") moves for entry of default judgment

20   in the amount of $112,200.00 against Defendant Reynaldo Pimental, individually and doing

21   business as Mariscos La Perla.  Plaintiff seeks damages stemming from Defendant's alleged

22   violation of 47 U.S.C. § 605(a) and conversion of Plaintiff's property.  The Court has considered

23   the moving papers and the oral argument of Plaintiff's counsel presented at the hearing on July

24   15, 2011.  For the reasons discussed below, the motion will be granted in part.

25

26

27

28
     ─────────────────────────
          [1] This disposition is not designated for publication in the official reports.

1

## I.  Background

2

**A.    Procedural history**

3      Plaintiff filed the instant action on November 10, 2010.  On December 19, 2010, Plaintiff

4  provided proof of service on Defendant.  (Docket No. 6.)  On April 11, 2011, Plaintiff moved for

5  entry of default and served the motion by mail.  (Docket No. 16.)  The clerk entered default on

6  April 13, 2011.  (Docket No. 18.)  Plaintiff moved for default judgment on May 26, 2011.

7  (Docket No. 20.)  Plaintiff provided proof of service indicating that a copy of the notice of

8  application and application for default judgment had been mailed to Defendant.  *Id.*

9

**B.    Factual history**

10      Plaintiff is a distributor of sports and entertainment programming.  It purchased the rights

11  to broadcast a November 14, 2009, boxing match between Manny Pacquiao and Miguel Cott,

12  together with undercard bouts, televised replay, and color commentary (collectively, the

13  "Program").  It then entered into sublicenses with third parties such as casinos, bars, and social

14  clubs, allowing the sublicensees to exhibit the Program to their patrons.  The Program was

15  broadcast in interstate commerce by means of an encrypted transmission, and only Plaintiff's

16  sublicensees were entitled to decrypt that transmission.

17      On the day of the broadcast, Irene Calderon ("Calderon"), an investigator hired by

18  Plaintiff, observed an exhibition of the Program in Mariscos La Perla although Defendant was

19  not a sublicensee entitled to exhibit the Program.  Calderon entered the premises without paying

20  a cover charge and observed the Program on a thirty-two inch television.  (Calderon Declaration

21  2.)  Between 8:00 p.m. and 8:20 p.m., she performed three headcounts, noting the presence of

22  thirty-four, twelve, and twenty-four people by each respective count.  (*Id.* at 3.)  Mariscos La

23  Perla has capacity of seventy people.  (*Id.*)  The declaration did not state whether Calderon

24  observed a satellite dish or a cable box.  (*Id.*)

25

26

## II.  Discussion

27      Plaintiff seeks $10,000 in statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II),

28  $100,000 in enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), and $2,200 in damages

2

1    for conversion.  Plaintiff also alleges that Defendant have violated 47 U.S.C § 553(a), which

2    provides for statutory damages pursuant to subsection (c)(3)(A)(ii) and enhanced damages

3    pursuant to subsection (c)(3)(B).

**A.    Whether to apply 47 U.S.C. § 605 or 47 U.S.C § 553**

5    "[U]pon default the factual allegations of the complaint, except those relating to the

6    amount of damages, will be taken as true." *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th

7    Cir. 1977) (citing *Pope v. United States*, 323 U.S. 1 (1944); *Flaks v. Koegel*, 504 F.2d 702, 707

8    (2d Cir. 1974)).  Plaintiff seeks damages pursuant to § 605, which "requires proof that a

9    defendant has '(1) intercepted or aided the interception of, and (2) divulged or published, or

10    aided the divulging or publishing of, a communication transmitted by the plaintiff.'" *California*

11    *Satellite Systems v. Seimon*, 767 F.2d 1364, 1366 (9th Cir. 1985) (citing *National Subscription*

12    *Television v. S & H TV*, 644 F.2d 820, 826 (9th Cir. 1981)).  Plaintiff alleges in its complaint that

13    it transmitted the Program, that Defendants unlawfully intercepted the Program, and that

14    Defendant exhibited the Program.  (Complaint ¶¶ 12-15.)

15    However, § 605 applies only to intercepted "radio" communications or broadcasts

16    through the air, such as satellite broadcasts. *J & J Sports Productions, Inc. v. Man Thi Doan*,

17    No. C-08-00324 RMW, 2008 WL 4911223, at *2 (N.D. Cal. Nov. 13, 2008) (citing *United*

18    *States v. Norris*, 88 F.3d 462 (7th Cir. 1996)).  The pleadings do not allege that Defendant

19    intercepted a satellite broadcast, and Calderon does not state that she observed a satellite dish at

20    Mariscos La Perla.  (Calderon Decl.)  Plaintiff contends that it has been unable to ascertain

21    whether Defendant utilize a satellite dish only because Defendant has refused to answer and

22    appear in the instant case.  Nonetheless, the Court may not enter default judgment if the factual

23    allegations in the pleadings are insufficient to establish liability.

24    At the same time, the complaint asserts a claim under 47 U.S.C. § 553, which "prohibits a

25    person from 'intercept[ing] or receiv[ing] or assist[ing] in intercepting or receiving any

26    communications service offered over a cable system.'" *Man Thi Doan*, 2008 WL 4911223 at *2

27    (quoting 47 U.S.C. § 553(a)(1)) (alterations in the original).  While Calderon does not state that

28    she observed a cable box, (Calderon Decl.), it is undisputed that Defendant intercepted the

3

1   broadcast by some means, and a cable box is hidden more easily than a satellite dish. *Accord J*

2   *& J Sports Productions, Inc. v. Guzman et al.*, 3:08-cv-05469-MHP, 2009 WL 1034218, at *2

3   (N.D. Cal. April 16, 2009). Accordingly, Plaintiff's allegations are sufficient for present

4   purposes to establish Defendant's liability under § 553(a)(1).

5      **1.  Statutory damages pursuant to 47 U.S.C. § 553(c)(3)(A)(ii)**

6      An aggrieved party may recover either actual damages pursuant to § 553(c)(3)(A)(i) or

7   statutory damages pursuant to § 553(c)(3)(A)(ii). A court may award statutory damages of "not

8   less than $250 or more than $10,000 as the court considers just." 47 U.S.C. § 553(c)(3)(A)(ii).

9   While the violation in the instant case does not appear to be particularly egregious, Plaintiff

10   requests the statutory maximum, noting that at least one other district court has awarded the

11   maximum statutory damages available under § 605 under similar circumstances. *See J & J*

12   *Sports Productions, Inc. v. Flores*, No. 1:08-cv-0483 LJO DLB, 2009 WL 1860520, at *2 (E.D.

13   Cal. June 26, 2009) (awarding $10,000 in damages for the violation of § 605(a) in an

14   establishment without a cover charge and containing thirty-five people); *J & J Sports*

15   *Productions, Inc. v. George*, No. 1:08cv090 AWI DLB, 2008 WL 4224616, at *2 (E.D. Cal.

16   Sept. 15, 2008) (awarding $10,000 in damages for the violation of § 605(a) in an establishment

17   without a cover charge and containing thirty people).

18      Plaintiff contends that the maximum award against Defendant is necessary to deter future

19   violations. However, Mariscos La Perla holds only seventy people, with no more than thirty-

20   four present during any of Calderon's headcounts. No cover charge was required, and the

21   Program was shown only on one relatively small television. These factors suggest that

22   maximum damages are unwarranted. The Court finds that an award of $2,200 is sufficient under

23   the circumstances.

24      **2.  Enhanced damages pursuant to  47 U.S.C. § 553(c)(3)(B)**

25      47 U.S.C. § 553(c)(3)(B) provides that in the case of a willful violation for purposes of

26   commercial advantage or private gain, "the court in its discretion may increase the award of

27   damages . . . by an amount of not more than $50,000." Plaintiff alleges that Defendant's

28   interception of the program was willful and for purposes of commercial advantage or private

4

1    gain.  (Complaint ¶ 14.)  Facts alleged in the pleadings are binding upon the defaulting party.

2    *Geddes*, 559 F.2d at 560.  Mariscos La Perla is a commercial establishment.  Plaintiff alleges that

3    the broadcast was encrypted, making it exceedingly unlikely that Defendant could have

4    intercepted the broadcast unintentionally.

5          District courts in similar circumstances have used various factors to achieve the proper

6    compensation and deterrence, including use of cover charge, increase in food price during

7    program, presence of advertisements, number of patrons, number of televisions used, and

8    repeated violations or other impact of offender's conduct on the claimant.  *J&J Sports Prods. v.*

9    *Concepcion*, No. C 10-05092 WHA, 2011 U.S. Dist. LEXIS 60607, at *3 (N.D. Cal. June 7,

10   2011).  In *Concepcion*, where the defendants had more than fifty patrons and used three

11   televisions, Judge Alsup concluded that in light of the fact that defendants were first-time

12   offenders, and an award of damages in the amount of what defendants would have paid for a

13   proper license, plus $1,000, was a sufficient economic incentive to deter future violations.  Judge

14   Alsup also indicated that the damages would be substantially increased if the same defendants

15   committed the offense again.

16         In this case, Defendant had fewer patrons than the defendant in *Concepcion*, displayed

17   the program on only one relatively small television, and did not impose a cover charge.  Plaintiff

18   does not allege any previous violations by Plaintiff.  The Court concludes that an award of

19   $2,200 under § 553(c)(3)(A)(ii) and $2,200 for conversion, or twice what Defendant would have

20   had to pay for the license, is sufficient to deter future violations.  Accordingly, the Court declines

21   to impose enhanced damages.  However, as noted above, substantial enhanced damages would

22   be appropriate in response to future unlicensed display of Plaintiff's programming.

23   **B.    Damages for conversion**

24         As a result of Defendant's default, the facts alleged in the pleadings are sufficient to

25   establish that Defendant wrongfully denied Plaintiff ownership of the right to control the

26   exhibition the Program and therefore are sufficient to establish that Defendant is liable for the

27   tort of conversion.  *See Culp v. Signal Van & Storage*, 142 Cal. App. 2d Supp. 859, 862 (Cal.

28   App. Dep't Super. Ct. 1956).  Pursuant to Cal. Civ. Code § 3336, Defendant is liable for the

5

value of the property at the time of the conversion.  Accordingly, Plaintiff is entitled to recover the sublicensing fee of $2,200.

### III.  CONCLUSION

Plaintiff's motion is granted in part.  Plaintiff shall recover $2,200 in statutory damages pursuant to 47 U.S.C. § 553(c)(3)(A)(ii), and $2,200 pursuant to Cal. Civ. Code § 3336.

**IT IS SO ORDERED.**

DATED: July 15, 2011

_____
JEREMY FOGEL
United States District Judge

Case No. 5:10-cv-02717-JF/PSG
ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT
(JFLC3)